# Dreisbach's Appeal.

Where one who is both an heir and an administrator of the same intestate, takes land at the valuation, and there is afterwards a balance decreed in his favour on final settlement of the personal estate, the Orphans' Court which has decreed payment by him for the real estate and the balance in his favour on his administration account, may order one of these debts to be set off against the other, upon a petition which sets out such facts as show that the lands are still bound for the balance due on the administration account. But where it does not appear that the balance on the account was produced by the payment of debts whose liens existed at the time of their payment, the petition for the decree of set-off should be dismissed.

THIS was an appeal by Aaron Dreisbach from the decree of the Orphans' Court of the county of Northampton, dismissing the citation and refusing the prayer thereof, issued at the instance of appellant, and directed to the heirs of George Peter Dreisbach, deceased, to show cause why the balance due him as administrator, should not be deducted from the bonds, given by him on the acceptance of a portion of the real estate of the decedent.

George P. Dreisbach died on the 8th October, 1833, intestate, leaving a widow, named Margaret, and issue seven children, to wit, David, Aaron (the appellant), and others.

On the     day of     1833, letters of administration were issued to David Dreisbach and the said Aaron Dreisbach.

On the 24th January, 1834, on the application of Aaron Dreis-bach, the Orphans' Court awarded an inquest to make partition of the real estate of the deceased, and an inquest was accordingly held, dividing the said real estate into three purparts, and apprais-ing the said purparts, respectively as follows: No. 1 at $2691.31; No. 2, at $869.45; and No. 3, at $168.16.

On the 25th April, 1834, the inquisition thus made, was returned by the sheriff to the court and confirmed, and David

[Dreisbach's Appeal.]

Dreisbach accepted purpart No. 1, and the said Aaron Dreisbach, the appellant, and Jacob Dreisbach, accepted purpart No. 2, at the respective valuations aforesaid; and the court ordered the same to them respectively, "they first entering into recognisance and bonds for the true payment unto the widow and other children and representatives of the said intestate of their equal and proportionable parts of and in the valuation money aforesaid;" and the court " allow the said acceptors one year for the payment thereof, with legal interest."

The acceptors entered into the required recognisance, and also executed to the other heirs, pursuant to the said order of court, bonds as follows:

By David Dreisbach to each of the other six heirs for payment of $380.75, to wit: $253.83½, with 1 year's interest, on the 25th April, 1835; and $126.91⅓ at decease of widow.

By Aaron and Jacob, to each of the other five heirs for $120.48; viz. : $80.32, payable 25th April, 1835, with one year's interest; and $40.16 on death of the widow.

The purpart No. 3, having been refused by all the heirs, the court on 1st May, 1834, ordered the said purpart to be sold by the administrators, who sold it at public sale for $196, and the sale was confirmed by the court on the 29th August, 1834.

On 17th August, 1839, David Dreisbach, by deed, conveyed the said purpart No. 1, accepted by him, to Aaron Dreisbach, the appellant, subject to the lien of the recognisance of the said David Dreisbach, for the payment of the valuation money thereof.

On 23d March, 1846 (David Dreisbach being then deceased), the said Aaron Dreisbach, as surviving administrator, settled and filed in the Register's Office of Northampton county, his account upon the estate, exhibiting a balance due him of $4564.55.    This account having been duly advertised by the Register, was presented to and confirmed *nisi* by the Orphans' Court, on the 24th April, 1846; and on the same day the appellant presented his petition, verified by affidavit, to the said court, setting forth the facts hereinbefore stated, and praying the court to make a decree, "that the said balance so due him on the settlement of his administration account, may be deducted from, or set off against the valuation money of the said purparts so accepted as aforesaid, with the interest accrued thereon, and that credit be given upon the said recognisance and bonds for the amount thereof."

On the presentation whereof, the court awarded a citation to the other heirs and legal representatives of the intestate, to show cause against the decree being made, which citation was duly served.

Pending this citation, to wit, on the 29th June, 1846, on the application of several of the heirs, the court referred the account of the administrator to auditors "to examine, and if proper

resettle the same and make distribution, &c." On the 20th November, 1846, the said auditors made report thereon to the court finding a balance due to the accountant, of $4338.22, which report was confirmed *nisi* by the court, and no exceptions having been filed thereto, the said confirmation became absolute at the ensuing term.

On the 27th August, 1847, on motion of the appellant's counsel, the court granted a rule, to show cause why " he should not be credited on the recognisance and bonds, given at the acceptance of the real estate, with the sum of $4338.22, balance due him as per report of auditors," &c., of which the respondent's counsel took notice at the bar.

On the 20th November, 1847, Messrs. Reeder and Maxwell, as attorneys " for Enoch Heany and Elizabeth, his wife, Simon Heller and Sophia, his wife, and Adam Andre and Catharine, his wife," by permission of the court (the appellant objecting thereto), presented and filed a paper, wherein the said heirs say : " that they were wholly and strongly opposed to the granting of the application of the appellant, and that he is not entitled to have the decree made as prayed for. That the said lands are not subject to the payment of the said claim, and if they be, that the way proposed is not the legal and proper mode to have the said claim paid ; and that with all due respect to the opinion of the petitioners, the Orphans' Court have not, under the laws of this Commonwealth, the right to make the decree prayed for."

After hearing the cause, the court on the 2d of December, 1848, ordered that the decree be refused, and the petition dismissed, for the reasons assigned by JONES, President Judge, in an opinion as follows :—

" On the 24th April, 1846, Aaron Dreisbach, surviving administrator, and one of the sons and heirs at law of G. P. Dreisbach, deceased, presented his petition to this court, praying that a decree be made, directing that a certain balance due to him as surviving administrator, as aforesaid, should be deducted from, or set off against the valuation money of certain purparts of the real estate of the said decedent, with the interest accrued thereon, which purparts had been taken by him at the appraisement, and that credit be given on the ' recognisance and bonds, entered into by him or his grantor, for the amount of said balance and the interest accrued thereon.

" G. P. Dreisbach died in October, 1833. In April, 1834, the partition of his real estate was made, on which were given the bonds and recognisance mentioned in this petition. No account was ever filed by his administrators until the year 1846, shortly before this application was made to this court.

" In this district applications of this kind have been frequently made, and precedents that have been produced show the exercise

[Dreisbach's Appeal.]

of this power, invoked by this petition, as far back as thirty years ago. Credits have been given upon recognisances, under the authority of this court, in repeated instances; yet in every one of those cases, it is believed to have been done, not because the court possessed the power to make the decree *in invitum*, but because it was an amicable arrangement between the heirs and the recognisor; there was consequently no opposition to the action of the court, and the practice, such as it was, passed *sub silentio*. It was probably deemed the least circuitous, expensive, and troublesome way of reaching an end that could have been reached perhaps after partition, and within seven or five years after the death of the decedent, as the case happened to fall under § IV. Act 4 April, 1797, or § XXIV. Act 24 Feb. 1834, by an order of sale. But whilst decrees were made in such cases, in other cases of a like nature, where there was resistance or even mere want of consent, this court has refused to interfere.

"The case of Yohe *v.* Barnet, 1 *Bin.* 358, has been relied on, as showing that this court has the power here prayed to be exercised. There Yohe, who was largely indebted to the estate of his deceased father-in-law, upon partition and valuation of the real estate of his father-in-law, claimed that his wife's share of that estate should not be paid to the administrators in satisfaction of his debt. This was *before* the recognisance and bonds to the heirs were executed, and the Supreme Court, that being the condition of the matter, could see no reason why the Orphans' Court might not deduct what appeared to be due from him to the other heirs. It was necessary to do this, in order to ascertain what his share, if anything, of that real estate was, over and above his indebtedness, and that before the bonds and recognisance were executed; for in the words of the Chief Justice, if he once got hold of the money or the bond, there was reason to fear that payment of his debt would never be obtained. It would then, in the view of the Chief Justice, be too late to make the deduction *after* the execution of the recognisance. This case then, it would seem, does not apply to the state of facts presented upon the petition before us, nor, upon a careful examination of them, do we find anything in the cases from 11 *Ser. & R.* 231, 2 *Bin.* 299, 3 *Ser. & R.* 539, 17 *S. R.* 60, which has a closer application.

"The decree asked for on this occasion, we think, exceeds the jurisdiction of the Court, and therefore the prayer of the petitioner is refused.

"It is unnecessary to decide the other point that was argued, as to the right of the administrator to apply this debt of his to the payment of those bonds. Since the argument, a case has been reported in 5 *Barr* 103, in Lentz's Accounts, Wallace's Appeal, which, it seems to us, has a very direct bearing upon that point."

On the 10th Jan. 1849, Aaron Dreisbach appealed from this

[Dreisbach's Appeal.]

decree to the Supreme Court, and the following was assigned as error :—

"That the Orphans' Court erred in not making the decree prayed for by Aaron Dreisbach, and in dismissing the petition."

The case was argued by *Porter*, for the appellant.—The account filed by the appellant in 1846, as administrator of George P. Dreisbach, deceased, shows that his entire personal estate was absorbed in the payment of his debts, and that the appellant, in the discharge of his duty, paid from his own funds, the sum of $4564.55, in extinguishment of other debts of that intestate, for which he had not personal assets in his hands.

Under procedings in partition, for the valuation and division of the decedent's real estate, in 1834, the appellant became liable to pay to the other heirs of the deceased, their respective shares in the valuation money, as the acceptant and alienee of the land so appraised, and these shares are secured by recognisance as a lien upon the real estate, now in the hands of the appellant.

Upon the confirmation of the appellant's account, in 1846, he applied to the Orphans' Court to have the said balance of $4564.55 deducted, or set off against the valuation money of the land, which application the Orphans' Court refused. He contended that the court had power to direct the off-set : 2 *Bin*. 299 ; 11 *Ser. & R.* 69 ; 10 *Barr* 390 ; Yohe *v*. Barnet, 1 *Bin*. 358 ; 4 *Yeates* 74 ; 2 *Pa. Rep.* 372, Johnson *v*. Matson ; 3 *Rawle* 430, Rhoads' estate.

But it is contended on the other side, that more than five years having elapsed, since the death of George P. Dreisbach, before the account was filed, and the administrator having failed to follow the directions of the Act of 24th of February, 1834, limiting the debts of a decedent to a period of five years after his death, the lien of his claim is gone as to the lands, and he cannot, therefore, set it off against the valuation money.

The appellant does not allege that his claim is an existing lien upon the real estate. The land itself, as land, cannot be reached for its payment. It has been determined by this court, in Commonwealth *v*. Pool, 6 *Watts* 32, and kindred cases, that this limitation applies equally in favor of heirs as it does in favor of purchasers. And it has also been decided, that the debts of a decedent are subject to the same limitation in the hands of the administrator, who has paid them out of his own funds, as they are in the hands of the original creditors : 1 *W. & Ser*. 208, Clauser's Estate ; 5 *W. & Ser*. 397, McCurdy's Appeal.

But, in the present case, the appellant was lulled into security by the fact that he himself was in the seizin of the land, and he did not consider it at all essential to the preservation of his claim, that it should be asserted on record as a lien upon the land

in his own hands, as he himself, by reason of his ownership, was the party, by whom payment was to be made to the heirs, for their share of the valuation. And the money not being paid or demanded from him, he had a right to believe that they waived any benefit to themselves, arising out of his neglect to file a copy of his claim. Being himself the owner of the land, it would have been an anomaly in him to assume the position of a creditor, holding a lien on his own estate. In the case of Rhoads' estate, 3 *Rawle*, the testator died in 1814; partition among the heirs was made in 1815. The application for contribution by the heirs was not made till 1828, and yet this court confirmed the decree of the Orphans' Court, which decreed contribution.

No attempt has ever been made to enforce the payment of the bonds of appellant: 1 *W. & Ser.* 183; 2 *Jones*, Goep's Appeal, were cited.

*Maxwell* and *Reeder* for appellees.

If the personal estate was insufficient to pay the debts, the administrators should have made application to the Orphans'. Court for an order of sale, stating an account of the debts; so that the heirs would have been informed of the condition of the estate; and if an order of sale had been directed, the estate would have been open to competition. The right of the Orphans' Court to make the decree prayed for, was denied. That it was a court of limited jurisdiction, and has not the general powers of a court of chancery.

But if they had such a power, it should have been exercised within *seven* years from the death of the intestate, the period fixed by law as limiting the liens of such debts on the real estate of a decedent: 1 *W. & Ser.* 293, Seitzinger *v.* Fisher; 5 *W. & Ser.* 397, M'Curdy's Appeal.

The accounts of the administrators show the payment of a large amount of the alleged indebtedness of the decedent, after the expiration of the seven years: 1 *W. & Ser.* 208, Clausen's Estate; 6 *Watts* 32, Com'th. *v.* Pool; 1 *Watts* 1, Kerper *v.* Hoch; 5 *Barr* 104, Wallace's Appeal.

*Porter*, in reply.—The administrator accepted the land as heir, not as administrator. All the debts paid were either paid or assumed by the administrator within a short period after the death of the intestate. None of the debts paid were barred by the statute when the administrator, as heir, accepted the land. The report of the auditor shows that a large proportion of the debts were paid, and the balance assumed, whilst they were liens.

The powers of the Orphans' Court embrace this case: 1 *Whart.* 96, Wimmer's Appeal; Act of 16th June, 1836, relating to the jurisdiction of the Orphans' Court, *Purdon* 252–3; Fretz's Appeal, 4 *W. & Ser.* 435.

[Dreisbach's Appeal.]

The opinion of the court was delivered Dec. 29, by

BLACK, C. J.—We are of opinion that where a person who is both an heir and an administrator of the same intestate takes land at the valuation, and there is a balance in his favor on final settlement of the personal estate, the Orphans' Court which has decreed that he shall pay for the real estate and that he shall receive the sum due him on his account, may order one of these debts to be set off against the other, upon a petition being presented which sets forth such facts as show that the lands are still bound for such balance. The court below, therefore, in dismissing the petition for want of general jurisdiction over the subject-matter, did so for what we think an erroneous reason.

But, under the circumstances of this case, it was necessary that the petition should contain something more than the mere bald statement of the amounts due respectively on the recognisance and on the account. The intestate died in 1833. His debts were liens on his land for seven years. The administration account was filed and confirmed in 1846. It is manifest, from these dates, that the balance in favor of the accountant may have been produced by credits for the payment of debts whose liens on the land have expired long since. Such, indeed, is the presumption of law, in the absence both of allegation and proof to the contrary. If the fact was otherwise the petition should have particularized the debts, described their nature, and set forth the acts by which their liens had been continued. This not having been done, the record before us discloses no case which entitles the plaintiff to the relief he has asked for. The decree of the Orphans' Court, dismissing the petition, is therefore affirmed.

Decree affirmed.